UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

AUBREY FREEMAN,

      Petitioner,

v.                                Case No.  3:17cv951-LC-HTC

MARK S. INCH, Secretary,
Department of Corrections.[1]

      Respondent.
_____/

## REPORT AND RECOMMENDATION

      This matter is before the Court on Petitioner Aubrey Freeman's amended petition for writ of habeas corpus under 28 U.S.C. § 2254 (ECF Doc. 3), with accompanying memorandum (ECF Doc. 4).  Freeman's petition contains three grounds based on claims of ineffective assistance of counsel.  Specifically, Freeman alleges trial counsel was ineffective in failing: (1) to accept the prosecutor's invitation to engage in plea negotiations; (2) to provide him accurate advice regarding his sentencing exposure; and (3) to move to suppress his post-arrest inculpatory statements.  ECF Doc. 3.  The matter was referred to the undersigned

---

[1]Mark S. Inch succeeded Julie Jones as Secretary of the Florida Department of Corrections and is automatically substituted as the respondent.  *See* Fed. R. Civ. P. 25(d).

Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After considering the Petition, the State's response (ECF Doc. 14) and the Petitioner's reply (ECF Doc. 18) and for the reasons which follow, the undersigned recommends the Petition be **DISMISSED** without an evidentiary hearing.

## I.    BACKGROUND & PROCEDURAL HISTORY

On February 12, 2014, Freeman was charged with two felonies: Count 1 charged "Attempted Robbery Armed with a Firearm (10-20-Life)," and Count 2 charged "Aggravated Battery with Great Bodily Harm Or with A Deadly Weapon And Used A Firearm (10-20-Life)."  ECF Doc. 14-4 at 35.  The offenses relate to a conspiracy among Freeman and two co-defendants to rob the victim, James Wright, of his drugs and money.  ECF Doc. 4 at 2.  During the commission of the crime, Freeman fired two shots at the victim, striking him once in the leg.  *Id*.  Freeman admitted to shooting the victim.  ECF Doc. 14 at 3.  One of the other co-defendants also admitted to participating in the robbery.  *Id*.

Under the "10-20-Life" subsection, Freeman faced a potential 20-year mandatory minimum for each charge, if a firearm was discharged during the commission of the offense.  Fla. Stat. § 775.087(2)(a)(2).  (If a firearm was used but was not discharged during the commission of the crime, the mandatory minimum is

10 years.)  However, because he was nineteen years old at the time of the offenses, Freeman could avoid the 10 or 20-year mandatory minimum if he was sentenced as a "youthful offender." *See* Fla. Stat. § 958.04(2)(d).  Under that section, a court may sentence, as a "youthful offender," any person who is eighteen to twenty years old and who has not used the "youthful offender" designation previously.  *Id.*  The maximum penalty under that section is up to six (6) years custody in a youthful offender program.  *See id.*

On August 20, 2014, Freeman pled guilty to the charges.  ECF Doc. 14-1 at 208-33.  The trial court engaged in an extensive plea colloquy with Freeman (*see, infra,* Section II.B.), which included confirming Freeman understood he was looking at a potential of 40 years in prison and that while his attorney could ask for Youthful Offender status, the ultimate sentencing decision was left to the court.  *See id.*  The trial court sentenced Freeman on September 24, 2019.  ECF Doc. 14-1 at 234-82.  At the sentencing hearing, Freeman's counsel argued that Freeman should be sentenced as a Youthful Offender.  *Id.* at 277-78.  The trial court, however, declined to do so and, instead, sentenced Freeman to 15 years for Count One, which was the maximum penalty, and 20 years for Count Two, to be served concurrently.  *Id.* at 279-80.

Freeman filed a direct appeal to the First District Court of Appeal (Case No. 1D14-4878). ECF Doc. 14-1 at 125. An *Anders*[2] brief was filed asserting the appeal was without merit because Florida Rule of Appellate Procedure 9.140(b)(2)(A) allows for an appeal of a no-contest plea under only certain circumstances, none of which applied to Freeman's case. ECF Doc. 14-2. The First District Court of Appeal *per curiam* affirmed the trial court's judgment on September 2, 2015, and issued the mandate on September 29, 2015. ECF Doc. 14-3; *Freeman v. State*, 173 So. 3d 889 (Fla. 1st DCA 2015).

Freeman then filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 on October 5, 2016, asserting the same three grounds for relief as contained in this Petition.[3] ECF Doc. 14-4 at 10-24. On February 22, 2017, the state court issued an order denying the motion without an evidentiary hearing. *Id.* at 25-33. Freeman appealed that ruling to the First District Court of Appeal (Case number 1D17-1208). ECF Doc. 14-4 at 141. On October 10, 2017, the First District issued a *per curiam* affirmance and issued a mandate on October 31, 2017. ECF

---

[2] *Anders v. California*, 386 U.S. 738 (1967).

[3] Respondent argues that Ground Two of Petitioner's claim is not the same as the claim raised in in his 3.850 motion because the facts on which the claim is based are different here. ECF Doc. 14 at 30. Specifically, in the motion, Freeman did not argue counsel misunderstood the law. Thus, Respondent contends this Court is procedurally barred from considering that claim here. Because the underlying claim remains the same, the Court will address the claim on its merits.

Doc. 14-7 (Ex. G).  The Petitioner timely filed the instant Petition on December 26, 2017.  ECF Doc. 1.

## II.    LEGAL ANALYSIS

### A.    <u>Ineffective Assistance for Failing to Engage in Plea Discussions</u>.

In Ground One of the Petition, Freeman argues he was denied his right to effective assistance of counsel when his trial counsel declined the State's offer to engage in plea negotiations.  ECF Doc. 3 at 4-5.  Specifically, Freeman alleges, in a verified petition, that after he was transferred to the Jefferson Correctional Institution, he was contacted by telephone by the State Attorney assigned to his case, who advised Petitioner that "he wanted to resolve the case through plea negotiations" and further advised that when "he asked trial counsel about this, she advised the State that she 'had it taken care of.'"  *Id.*  Freeman further alleges the "State made it clear to the Petitioner he wanted to resolve it with something lower than what he ultimately received."  *Id.*  Finally, Freeman contends he "would have taken a plea offer, had he been offered one by the State Attorney."  *Id.*

When Freeman raised this claim in his post-conviction motion for relief, the state court rejected the claim as a matter of law, finding that because there was no actual plea offered and no guarantee that a plea would be offered, not withdrawn and accepted by the court, Freeman's claim was "speculative" and "post-conviction

relief cannot be based on such speculation."[4]  ECF Doc. 14-4 at 26-7, citing *Maharai v. State*, 778 So. 2d 944, 951 (Fla. 2000).  Freeman argues the state court's decision is wrong because he has a right to effective assistance of counsel during plea negotiations, which he was deprived of when his counsel failed to accept the state attorney's offer to engage in plea negotiations.  ECF Doc. 4 at 6-7.

Under the standard of review for a § 2254 motion, this Court is precluded from granting a habeas petition on a claim that was adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5]  28 U.S.C. § 2254(d); The United States Supreme Court set forth the framework for a § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).  *See id.*, at 412-13 (O'Connor, J.,

---

[4] Because the First District issued a *per curiam* affirmance, this Court will "look through" that decision to the last related state-court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning.  *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).  Here, that last decision comes from the Order Denying Motion for Post-Conviction Relief, issued by Circuit Judge J. Scott Duncan.  ECF Doc. 14-4 at 25-33.

[5] This second prong of the *Williams'* framework does not apply to Ground One of Petitioner's claim because the state court's decision was not based on a determination of the facts, but was made as a matter of law.  *See Gill v. Mecusker*, 537 U.S. 322, 340 (2003) (the "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding).

concurring).  Under the *Williams* framework, a federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010).  Once the governing legal principle is identified, the federal court must determine whether the state court's adjudication is "contrary to" the identified governing legal principle or the state court "unreasonably applie[d] that principle to the facts of the [] case."  *See Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring).

There are two governing legal principles that are pertinent to Freeman's claim. The first governing legal principle comes from *Lafler v. Cooper*, 566 U.S. 156 (2012), and *Missouri v. Frye*, 566 U.S. 134 (2012), cases in which the Supreme Court addressed ineffective assistance of counsel claims in the context of plea negotiations.  The second legal principle comes from *Strickland v. Washington*, 466 U.S. 668 (1984), where the Court set forth the following 2-prong test for determining whether counsel's performance is constitutionally ineffective:  A petitioner must

show (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him. *See id.* at 687.

In *Lafler*, the Supreme Court held that counsel was ineffective for advising his client of an incorrect legal rule, which led to the client rejecting the plea that had been offered. *Lafler*, 566 U.S. at 1380. In *Frye*, the Supreme Court found that counsel's failure to convey a letter to his client from the prosecutor offering two possible plea bargains and, instead, letting them lapse was ineffective under *Strickland.* Significant to, and detrimental to, Freeman's ineffectiveness claim is that those holdings are limited to situations where a plea offer was made. *See, Frye*, 566 U.S. at 137 ("defense counsel has the duty to communicate formal prosecution offers to accept a plea on terms and conditions that may be favorable to the accused"). Indeed, nowhere in either opinion did the Supreme Court extend its holdings to a situation where no plea was offered or indicate an intention to do so. To the contrary, in *Frye*, the Supreme Court declined to expand its holding, stating, "this case presents neither the necessity nor the occasion to define the duties of defense counsel in [the plea bargaining process]. Here the question is whether defense counsel has the duty to communicate the terms of a **formal offer to accept a plea**...." *See id.* at 145 (emphasis added). The Court went on further to express a concern over the potential for "late, frivolous, or fabricated claims" that may arise

Case No. 3:17cv951-LC-HTC

from undocumented and informal plea offers, suggesting that "the prosecution and the trial courts [] adopt some measures" to abate same. *See id*.

In the state court's order, it emphasized that under the Supreme Court's explanation in *Lafler,* "if no plea offer is made … the issue raised [in *Lafler*] simply does not apply." ECF Doc. 14-4 at 26-7, citing *Lafler*, 566 U.S. at 168. Neither the state court's reasoning nor the result of its decision is contrary to *Lafler* or *Frye*. *See Early v. Packer,* 537 U.S. 3, 8 (2002). In other words, because there is no Supreme Court case confronting the specific issue here, involving an offer to talk versus a plea offer, the state court's decision cannot be "contrary to" federal law. *See Woods v. Donald*, 135 S. Ct. 1372, 1377 (2015) ("([b]ecause none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court") (internal quotation marks and citation omitted)).

The state court's decision is further not contrary to *Strickland*. In *Frye,* the Supreme Court held that for a defendant to establish the prejudice prong under *Strickland*,[6] "defendants must demonstrate a reasonable probability that they would

---

[6] Since Freeman cannot establish the performance prong of the *Strickland* test, there is no need to address the performance prong. *Strickland*, 466 U.S. at 697 ("[i]f it is easier to depose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be

have accepted the more favorable plea offer had they been afforded effective assistance of counsel and that the plea would have been entered without the prosecution's canceling it or the trial court's refusing to accept it." *Frye*, 566 U.S. at 137; *see also Lafler*, 566 U.S. at 1380.  Since Freeman does not allege that any offer was made, either formally or informally, Freeman cannot demonstrate a reasonable probability that he would have accepted the plea offer, that the government would not have withdrawn it or that the state court would have accepted it.[7]  Without the existence of a plea offer, Freeman's statement that he would have accepted "a plea offer" (regardless of what it may have been) is insufficient.  *See Berthoff v United States*, 140 F.Supp.2d 50, 58 (D. Mass. 2001) (finding that prosecution's letter to engage in plea negotiations was not an "offer" capable of acceptance, but an "opening bell for a round of hard bargaining, not the closing

---

so, that course should be followed); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa").

[7] Based on the record, it is likely the trial court would not have accepted a plea involving a significant reduction in time.  First, the trial court declined to afford Freeman Youthful Offender status, which would have given him 6-year maximum sentence, and in doing so told the Defendant his case was a "very serious case."  ECF Doc. 14-1 at 279-80.  Second, during the plea, Freeman objected to one part of the State's recitation of facts, which provided that Freeman held a gun to the victim's head during the robbery.  *Id*. at 221-22.  At sentencing, the State resolved the dispute by agreeing to a 10-year mandatory minimum on Count One (*i.e.*, treating the shooting as having not occurred during the robbery).  *Id*. at 264.  Instead of sentencing Freeman to 10 years for Count One, however, the trial court sentenced him to the maximum 15 years.  *Id*. at 279-80.

position"); *see Frost v. United States*, 2002 WL 1941469, *3 (S.D. NY April 21, 2002) (finding petitioner's claim that his acceptance of a plea offer would have resulted in a reduced sentence as being made "with hindsight" and "conjecture" and as "self-serving").

The state court's denial of the post-conviction motion also did not involve "an unreasonable application of … clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d); *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring). "Under the 'unreasonable application' clause of a *Williams* review, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 412-13. The federal court defers to the state court's reasoning unless the state court's application of legal principles was "objectively. unreasonable" in light of the record before the court. *See id*. at 409. Here, the lack of a plea agreement or offer makes Freeman's case materially different from *Frye* and *Lafler*; thus, the state court's decision cannot be said to have been contrary to controlling federal law. *See id.* ("[u]nder the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially

indistinguishable facts"). Moreover, and as additional indicia that the state court's decision was not "unreasonable" or "contrary", the state court's decision follows the majority of courts who have addressed this issue. *See LoCurto v. United States*, No. 10CV4589NGGJO, 2016 WL 4257550, at *8 (E.D.N.Y. Aug. 12, 2016) (noting that "[m]ost courts to address this issue have interpreted *Lafler* and *Frye* to require the extension of a formal plea offer in order for a petitioner to prevail on claims of ineffective assistance in the context of plea negotiations").[8]

An expansion of *Lafler* and *Frye* to reach to the facts alleged here would further be inappropriate in the context of a § 2254 review because a state court cannot be found to have contradicted clearly established federal law if that law has not been clearly established. *See Woods*, 135 S. Ct. 1372, 1376 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation

---

[8] *Cf. See United States v. Petters*, 986 F. Supp. 2d 1077, 1082 (D. Minn. 2013) (interpreting *Frye* as holding that "ineffective assistance may arise only when formal plea offers have not been communicated to defendants"); *Zamora v. Wainwright*, 637 F.Supp. 439, 443 (S.D. Fla. 1986) (holding that ineffective assistance of counsel claim cannot be sustained based on argument that counsel was ineffective for failing to inaugurate an attempt to plea); *Frost v. United States*, 2002 WL at *3 (denying evidentiary hearing on § 2255 motion where petitioner presented no evidence that a plea was negotiated, offered or initiated by the government but just a letter that "could perhaps be liberally construed as inviting plea discussions"); *Barnes v. United States*, 2013 WL 3357925, at *7 (S.D. NY July 2, 2013) (finding that a lack of a plea offer makes "Lafler and Frye [] distinguishable"); *Berthoff*, 140 F. Supp. 2d at 58.

marks and citation omitted)). Indeed, none of the minority of cases where an evidentiary hearing was found to be warranted or a petition was granted involved a § 2254 review.[9] Moreover, even if the undersigned would have reached a different decision than the state court, that would not make the court's decision "unreasonable." *See Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult").

Finally, the undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, this Court must take into account the deferential standards prescribed by § 2254. *See id.* Freeman argues he is entitled to an evidentiary hearing because "there are factual issues still in dispute." ECF Doc. 4 at 8. This argument, however, is not supported by the record and

---

[9] *See e.g., United States v. Polatis*, No. 2:10-CR-0364, 2013 WL 1149842, at *10 (D. Utah Mar. 19, 2013) (stating in a footnote, "[t]he court is also persuaded by Defendant's argument that … counsel can be constitutionally ineffective in the plea negotiation process if they fail to convey to the defendant the government's articulated willingness to resolve a case by negotiation…."); *United States v. Pender*, 514 F. App'x 359 (4th Cir. 2013) (requiring evidentiary hearing on ineffective assistance claim based on attorney's failure to seek a plea, where government conceded a plea had been made).

Case No. 3:17cv951-LC-HTC

Freeman does not identify any such alleged factual disputes. The state court did not make any factual determinations but, instead, assumed Petitioner's factual allegations to be true when it decided the issue as a matter of law. *See id.*

### B.  <u>Ineffective Assistance of Counsel for Providing Incorrect Advice Regarding Possible Sentencing Exposure</u>.

In Ground Two of the Petition, Freeman argues he was denied his right to effective assistance of counsel when trial counsel gave him incorrect information about the sentence he was facing, and as a result, his plea was not entered knowingly or voluntarily. ECF Doc. 4 at 10. Specifically, Freeman argues that he "believed, as a result of trial counsel's advice, that if he pled open he would receive a sentence of six (6) years in prison, at the most, in light of the Youthful Offender Act. ECF Doc. 4 at 12. He argues that had he known he was "actually exposed to a 40 year mandatory sentence," he would not have pled and that he relied on trial counsel's advice that the state court "would absolutely waive the minimum mandatory sentence and sentence him to a youthful offender sentence."[10] *Id.* at 12. Freeman argues that "in reality, the trial court did not have the ability to waive the minimum

---

[10] Freeman claims counsel consistently told him he would get Youthful Offender status because of his lack of criminal history and minor involvement in the crimes. The record shows, however, that Freeman had more than a minor involvement in the offenses charged. The statement of facts submitted by the State, and agreed to by Freeman, provides that he was the one who fired two shots at the victim. ECF Doc. 4 at 2.

Case No. 3:17cv951-LC-HTC

mandatory," and thus trial counsel's advice was based on her misunderstanding of the law. *Id.*

The state court denied the motion as to Ground Two, finding that the mere fact that trial counsel's prediction as to Freeman's sentence was wrong is not evidence of deficient performance and any deficiency was cured by the extensive plea colloquy between the trial court and the Petitioner. ECF Doc. 14-4 at 28. Thus, the trial court found that Freeman's plea was knowingly and voluntarily entered. Applying the *Williams* framework, the state court's adjudication was neither contrary to federal law nor an unreasonable application of federal law. Additionally, the state court's findings of facts were not unreasonable. *See Miller-El*, 537 U.S. at 340; *Brumfield*, 135 S. Ct. at 2277.

As an initial matter, trial counsel's performance was not deficient under *Strickland* because she did not misunderstand the law. In *Gallimore v. State*, the Fourth District Court of Appeal held that the plain language of the youthful offender statute "gives a trial court the discretion to impose a youthful offender sentence in lieu of the 10–20–Life statute's minimum mandatory sentence." 100 So. 3d 1264, 1266–67 (Fla. 4th DCA 2012). The *Gallimore* court also noted that "[t]he first and second districts also have held that the charge involved here, robbery while in actual possession of a firearm, is a first-degree felony, not a life felony, and as such, is not

excepted from the youthful offender statute's consideration." *Ruth v. State*, 949 So.2d 288, 289–90 (Fla. 1st DCA 2007); *Simpkins v. State*, 784 So.2d 1203, 1204 (Fla. 2nd DCA 2001).  Freeman's counsel was, thus, correct when she told him that the trial court could waive the mandatory minimum sentence by sentencing him as a youthful offender.  Unfortunately for Freeman, the trial court simply chose not to exercise that discretion in his favor.  ECF Doc. 14-1 at 279-80.  The state court was also correct that an inaccurate prediction about sentencing will generally not be sufficient to sustain a claim of ineffective assistance of counsel.  *See United States v. Himick*, 139 F. App'x 227, 228–29 (11th Cir. 2005) (citing *United States v. Bradley*, 905 F. 2d 359, 360 (11th Cir. 1990) ("a defendant's reliance on an attorney's mistaken impression about the length of his sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence").

Similarly, the state court was correct in concluding that Freeman could also not establish the prejudice prong of the *Strickland* test.  Freeman's argument that he was prejudiced by counsel's performance because "had he been aware that he was actually exposed to a possible 40-year mandatory sentence, he would never have entered an open plea to the state trial court and instead, would have insisted on going to trial," is simply not supported by the record.   ECF Doc. 4 at 12.  Regardless of

what he claims he was told by his counsel, the trial judge made it clear his sentence was up to her. During the plea colloquy she asked, "[a]nd have you talked to [counsel] about the fact that you are going to enter what's called a plea straight up to me? And that means it's up to me as to the sentence I can impose; do you understand that?" The Petitioner, under oath, answered, "Yes, ma'am." ECF Doc. 14-1, at 211-12.

The trial judge also made sure Freeman understood that each offense carried a 20-year mandatory minimum. As to Count One, the judge asked Petitioner if he understood that his mandatory minimum sentence "means day-for-day, 20 years day-for day" and that he would be "[i]n an adult prison as an adult." Petitioner answered, "Yes, ma'am" to both questions. *Id.* at 215. Similarly, as to Count Two, the trial judge explained the mandatory minimum sentence meant "[d]ay-for-day 20 years. You are 19 now. Nineteen plus 20 is 39; do you understand?" *See id*. After describing the mandatory minimum of 20 years on Count Two, the judge then explained that the sentences could run consecutively:

> THE COURT: Okay. That I could run those two sentences consecutive to each other **for a total of 40**; do you understand that?
>
> THE DEFENDANT: Yes, ma'am.

> THE COURT: There is no promise about that. Your attorney can argue for anything that she thinks is lawful, but I think the maximum exposure would be **40 years day-for-day**, mandatory minimum. You agree?

*Id.* at 215-16 (emphasis added). The judge then engaged in the following exchange

with Freeman:

> THE COURT: So 19 **plus 40** is 59. Do you hear what I'm saying?

> THE DEFENDANT: Yes, ma'am.

> THE COURT: I'm only 50 myself. That's a long time. Do you understand that?

> THE DEFENDANT: Yes, ma'am.

> THE COURT: Okay. So what I'm saying is, do you understand that if next week, next month, you say I want to go to trial, can you go to trial then?

> THE DEFENDANT: No, ma'am.

> THE COURT: Why can't you?

> THE DEFENDANT: Because I gave up those rights.

> THE COURT: Okay, That's the right answer. I wanted to just make sure you understand that. And if I sentence you ·within the law and you say, gee, I don't like that sentence, if it's a legal -- if it's legal, do you understand that's the end of it?

> THE DEFENDANT: Yes, ma'am.

*Id.* at 217 (emphasis added). The judge also made it clear that Freeman could seek youthful offender treatment at sentencing but that there was no guarantee she would treat him as a youthful offender:

> THE COURT: … if he has 20-year mandatory minimum on Count 2, I guess Ms. Cashwell could come in and ask for youthful offender or something.
>
> MS. CASHWELL: Yes, Your Honor.
>
> THE COURT: But there is no guarantee of youthful offender.
>
> MS. CASHWELL: No, Your Honor.
>
> THE COURT: Because you've heard what I've said, right?
>
> MS. CASHWELL: Yes, Your Honor.
>
> THE COURT: I mean, l. know Ms. Cashwell has heard me. I want to make sure you've heard me.
>
> THE DEFENDANT: Yes, ma'am.

*Id.* at 224-25.

Freeman admitted under oath that he understood the court's statements as to his maximum sentence exposure, and the court correctly explained that exposure. There is a "strong presumption" that statements made by a defendant during his plea colloquy are true, *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir.1994); therefore, "when a defendant makes statements under oath at a plea colloquy, he

bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir.1988). Thus, the undersigned agrees with the state court that any prejudice to Freeman by counsel's advice was cured by the extensive plea colloquy. *See United States v. Wilson*, 245 F. App' 10, 12 (11th Cir. 2007) (any failure by counsel to explain the possible punishment cured by plea colloquy); *Barker v. United States*, 7 F.3d 629, 633–34 (7th Cir. 1993) (finding no ineffective assistance of counsel because any prejudice caused by counsel's misinformation was cured by the district court's thorough examination of defendant at the change of plea hearing).

Freeman also argues the petition should be granted because the state court "made its finding based on the fact that Petitioner threw himself 'on the mercy of the court' and[,] therefore, knew what he was doing" instead of on whether Freeman's plea was knowing or voluntary. ECF Doc. 4 at 12. This claim is also not supported by the record. In the state court's order denying Freeman's Rule 3.850 motion, the state court expressly addressed Petitioner's voluntariness argument, and found the following:

> Even if the Defendant's counsel did misadvise Defendant that he would be sentenced as a youthful offender and receive no more than six years in prison, any prejudice was cured by the Court by the plea colloquy and **did not affect the voluntariness** of Defendant's nolo contendere plea. The Court made it abundantly clear that there was no guarantee

> the Defendant would be sentenced as a youthful offender…. Despite
> this warning, the Defendant agreed to enter his plea. The Defendant's
> claim of an involuntary plea is refuted by the record.

ECF Doc. 14-4 at 25 (emphasis added). The state court's determination of the facts
is presumed to be correct absent clear and convincing evidence showing otherwise.
28 U.S.C. § 2254(e). Because the state court's decision is fully supported by the
record and given the deferential standard under § 2254, the undersigned finds that
an evidentiary hearing is not warranted.

### C.  <u>Ineffective Assistance of Counsel for Failing to File a Motion to Suppress</u>.

As his third ground for relief, Freeman argues his trial counsel was ineffective
for failing to suppress a statement he gave to law enforcement after his arrest,
admitting to his involvement in the offenses and having shot the victim. ECF Doc.
4 at 13. Freeman claims counsel should have moved to suppress the statement
because he told her he had ingested several Xanax bars and methamphetamine in the
days leading up to his interrogation by law enforcement, and as a result, he had "zero
idea what was going on at the time he made his statement to law enforcement." *Id*.
at 14. Freeman argues, "reasonable counsel would have been alerted that the
Petitioner could not have voluntarily waived his *Miranda* rights based on his level
of intoxication." *Id*. He further argues that the state court's rejection of his argument

was contrary to the Supreme Court's decision in *Kimmelman v. Morrison*, 477 U.S.

365 (1986).   As Freeman recognizes in his supporting memorandum, however,

*Kimmelman* does not hold that counsel's failure to move to suppress evidence is *per*

*se* ineffective under *Strickland*.   ECF Doc. 4 at 13.   Instead, whether counsel was

ineffective is a fact-intensive inquiry.   Here, the undersigned finds that the state court

reasonably considered the totality of the circumstances in determining that counsel

was not ineffective.

The state court made several factual findings, none of which were

unreasonable and all of which are presumed to be correct.   28 U.S.C. § 2254(d)(2)

and (e).   First, the state court found that by entering a plea, Freeman had given up

his right to file any such motions or assert any defenses.   ECF Doc. 14-4 at 30.

Second, the court found that the record refuted Freeman's claim he was too

intoxicated to knowingly and voluntarily waive his *Miranda* rights.   Specifically, the

investigator who took the statement testified that Freeman appeared to understand

his *Miranda* rights and gave a detailed statement, which was "very consistent" with

statements made by a co-defendant.   *Id.* at 43-47.   It was not unreasonable for the

state court to rely upon Freeman's demeanor and ability to give a detailed and

accurate statement to find that he did so knowingly and voluntarily.   *See United*

*States v. Smith*, 322 F. App'x 876, 878–79 (11th Cir. 2009) ("Based on the totality

of these circumstances, the district court made no error in determining that the passage of time and Smith's demeanor during questioning rendered his waiver of *Miranda* rights knowing and voluntary."). Third, the state court found that moving to suppress the statement would have been contrary to the defense strategy of entering a plea. ECF Doc. 14-4 at 31. Accordingly, Freeman fails to show that his counsel's failure to move to suppress the statement was deficient under *Strickland*.

Similarly, the state court's determination that any deficient performance of counsel was not prejudicial was not objectively unreasonable. *See Brumfield*, 135 S. Ct at 2277. Strickland's prejudice prong requires a defendant to establish a reasonable probability of a different result. *See Strickland*, 466 U.S. at 694. A reasonable probability is one that sufficiently undermines confidence in the outcome. *See id.*; *Richter*, 562 U.S. at 112. In its order, the state court determined that even without the statement, the evidence against Freeman was so strong that it is "illogical to conclude" Freeman would have chosen to go to trial if the statement had been suppressed. ECF Doc. 14-4 at 32. That evidence included testimony from the victim, physical evidence linking Freeman to the crime and statements by two eyewitnesses who "put the gun in [Freeman's] hand." ECF Doc. 14-4 at 31.

Moreover, as the state court correctly noted, had Freeman gone to trial rather than plea, he would have been looking at a potential life sentence because a jury

could have concluded (based on the evidence the State would have offered) that Freeman caused great bodily harm during the course of a robbery. *See id.* at 32. This potential greater sentence makes it even more unlikely that suppressing the statement would have made a difference to the outcome of the case. Accordingly, the undersigned finds that this claim should also be dismissed without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

1.     The clerk shall change the docket to reflect that Mark S. Inch has been substituted as the respondent.

And, it is respectfully RECOMMENDED:

1.     That Petitioner's petition under 28 U.S.C. § 2241 be DENIED, without an evidentiary hearing.

2.     That a certificate of appealability be DENIED.

3.     That the clerk close this matter

DONE AND ORDERED this 21st day of May, 2019.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.